## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

MELISSA M. SMITH,

        Plaintiff,

v.                                No. 14-CV-1073 MCA/WPL

FARMERS INSURANCE COMPANY
OF ARIZONA,

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** is before the Court on Plaintiff's Motion for Remand [Doc. 7]. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court finds that the motion is not well taken and will be denied.

## <u>BACKGROUND</u>

This matter arises out of an automobile accident that occurred on April 23, 2012, when Janet Garcia's vehicle struck the rear of Plaintiff Melissa M. Smith's vehicle. [Doc. 9-1, ¶¶ 4, 5]. Defendant Farmers Insurance Company of Arizona issued a policy of liability insurance to Garcia that was in effect on the date of the accident. [*Id.* ¶ 3].

On November 13, 2012, Plaintiff filed a "complaint for personal injury" in the Third Judicial District Court of the State of New Mexico against Garcia and Farmers. [Doc. 9-1] The complaint alleges that "[t]he direct and proximate cause of the accident was the negligence of Janet Garcia, and [that] the Defendant is responsible for Plaintiff's damages and Farmers Insurance Group is also responsible for the damages suffered by the Plaintiff." [*Id.* ¶ 8]. The complaint further alleges that "[t]he motor vehicle accident described above caused the Plaintiff[] . . . to suffer physical injury and has caused [Plaintiff] to seek medical treatment," [*id*. ¶ 6], that Plaintiff

"has also suffered lost earnings and lost earning capacity as a result of the injuries suffered in the motor vehicle accident," [*id*.], and that Plaintiff "has suffered pain and suffering and loss of enjoyment of life and is unable to perform household services in the manner she had prior to the accident," [*id*. ¶ 7].   The complaint further alleges that Plaintiff and Garcia are both citizens of New Mexico.   [*Id*. ¶¶ 1, 2].

On August 12, 2014, the jury returned a verdict in Plaintiff's favor, finding Garcia liable for the accident.   [Doc. 7-6 at 2-3].   Thereafter, on October 19, 2014, Plaintiff filed an amended complaint, which she served on Farmers on October 27, 2014.   [Doc. 1-1 at 1, 13].   The amended complaint alleges statutory bad faith and unfair practices claims against Farmers for violations of the Trade Practices and Frauds Article ("TPFA") of the New Mexico Insurance Code and alleges that Plaintiff brings these claims against Farmers as a third-party claimant pursuant to *Hovet v. Allstate*, 66 P.3d 980 (N.M. Ct. App. 2003) (referred to herein as a "*Hovet* claim").[1]   [*See, e.g.*, *id*. ¶¶ 1, 64, 67, 70 (alleging that Farmers engaged in bad faith and unfair insurance practices and that this conduct violated Sections 59A-16-20(E), (G), and (H) of the TPFA)].

On November 25, 2014, Farmers filed its Notice of Removal.   [Doc. 1].   In its notice, Farmers asserts that this Court has diversity jurisdiction over the amended complaint pursuant to 28 U.S.C. Section 1332(a), and that Farmers removes the amended complaint pursuant to 28 U.S.C. Sections 1441 and 1446.   [*Id*. at 1].   Farmers maintains that its principal place of business is in California and that it is a resident of Arizona.   [*Id*. ¶ 4].   It is undisputed that, with respect to the amended complaint, complete diversity exists and the amount in controversy is in excess of $75,000.   [Doc. 9 at 3; *see generally* Doc. 7 (failing to contest subject matter jurisdiction)].

---

[1]  Plaintiff cites to the New Mexico Court of Appeals case.   *Hovet* was affirmed by the New Mexico Supreme Court in *Hovet v. Allstate*, 89 P.3d 69 (N.M. 2004) in which the Court established that a third-party has a cause of action against an insurance company under the TPFA and set the preconditions for such a claim.

On December 22, 2014, Plaintiff filed her Motion for Remand pursuant to 28 U.S.C. Sections 1446(b)(3) and 1446(c)(1), asking the Court to remand the amended complaint and for an award of attorney's fees.   [Doc. 7]

## STANDARD

Section 1447(c) of Title 28 provides in relevant part that a "motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under Section 1446(a)."   28 U.S.C. § 1447(c).   A defect in the removal procedure is one of the grounds for remand authorized by Section 1447(c).   *See Moreno v. Taos County Bd. of Comm'rs*, 778 F. Supp. 2d 1139, 1141 (D.N.M. 2011).   Federal courts must strictly construe removal statutes and resolve all doubts against removal.   *See Fajen v. Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982) (citations omitted).   The removing party bears the burden of establishing the requirements for federal jurisdiction.   *See Martin v. Franklin Cap. Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001), *abrogated on other grounds by Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547 (2014); *McShares, Inc. v. Barry*, 979 F. Supp. 1338, 1342 (D. Kan. 1997).   "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."   28 U.S.C. § 1447(c).

## DISCUSSION

Plaintiff challenges Defendant's removal of her amended complaint on three grounds. First, Plaintiff contends that the removal is untimely under 28 U.S.C. Section 1446(b)(3), which provides that a defendant must file a notice of removal within 30 days from the date on which it

first may be ascertained that the case is subject to removal.   Next, Plaintiff asserts that removal is untimely under 28 U.S.C. Section 1446(c), which provides that a case may not be removed under Section 1446(b)(3) more than one year after commencement of the action.   Last, Plaintiff contends that Defendant has waived its right to remove the amended complaint by actively litigating in state court.   The Court, addressing each basis for remand in turn, holds that Defendant timely filed its Notice of Removal within the 30-day removal period prescribed by Section 1446(b)(3), that Defendant timely filed its Notice of Removal within the one-year period for removal prescribed by Section 1446(c), and that Defendant did not waive its right to remove by actively litigating in state court.

I.   Defendant Timely Filed its Notice of Removal within the 30-Day Removal Period Prescribed by 28 U.S.C. Section 1446(b)(3).

Plaintiff asserts that Defendant's removal is untimely because it falls outside the 30-day removal period prescribed by 28 U.S.C. Section 1446.   While subsection (b)(1) of Section 1446 provides that a defendant may remove a case within 30 days of receiving a copy of the "initial" pleading that sets forth the plaintiff's claim for relief, subsection (b)(3) provides that if a civil action is not initially subject to removal but later becomes subject to removal, the case may be removed within 30 days of receiving "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."   28 U.S.C. § 1446(b)(1), (3).

Defendant Farmers contends that its removal was timely because it could not first ascertain that the amended complaint was subject to removal until October 27, 2014, when Plaintiff served Farmers with a copy of the amended complaint, and because it filed its Notice of Removal on November 25, 2014, which was one day prior to the expiration of the 30-day period for removal

4

prescribed by subsection (b)(3).   In contrast, Plaintiff asserts that Farmers first "knew" or became "aware" of Plaintiff's *Hovet* claim from "other paper[s]"[2] at least as early as April 7, July 31, or September 2, 2014, and that it was receipt of this early awareness—not receipt of her amended complaint—that triggered the running of the 30-day period.   Plaintiff concludes that Defendant's removal therefore fell outside the 30-day deadline and was untimely.

The question before the Court is when the 30-day removal period contained in Section 1446(b)(3) began to run.   Subsection (b)(3) defines the trigger of the 30-day period as the date on which a defendant is in "receipt," through service or otherwise, of a copy of an amended pleading or "other paper" from which it may "first be ascertained that the case is one which is or has become removable." § 1446(b)(3).   The Court concludes that, as Defendant contends, the trigger of the 30-day period was Defendants' receipt of Plaintiff's amended complaint on October 27, 2014.

The amended complaint first established that Plaintiff's claim against Farmers had become removable.   Defendant's Notice of Removal indicates that Farmers removed the amended complaint pursuant to 28 U.S.C. Section 1441, which provides that a defendant may remove a state civil action to federal district court if the federal court has original diversity of citizenship or federal question jurisdiction over the matter, *see* § 1441(a), and that Defendant removed the complaint pursuant to 28 U.S.C. Section 1332, which provides that federal district courts shall have diversity jurisdiction over all civil actions with an amount in controversy in excess of $75,000 and between citizens of different states, *see* § 1332(a)(1).   [Doc. 1 at 1].   It is undisputed that complete diversity of citizenship exists between the parties, because Farmers is a

---

[2]   Plaintiff argues that courts have held that "other paper[s]" giving rise to notice that a claim may be removed include "motions, depositions, interrogatory answers, other correspondence[], demand letters, settlement offers, etc."   [Doc. 14 at 10 (citing cases)].   For purposes of deciding Plaintiff's motion, the Court assumes that the papers upon which she relies constitute "other paper[s]" capable of triggering the 30-day removal period prescribed by Section 1446(b)(3).

5

resident of Arizona with its principal place of business in California and because Plaintiff is a citizen of New Mexico.   It further is undisputed that the amount in controversy of the amended complaint exceeds $75,000.   Plaintiff does not challenge either of these jurisdictional facts in her Motion for Remand and a review of the allegations in the amended complaint establishes that the complaint provides "clear and unequivocal notice" that this Court has diversity jurisdiction over Plaintiff's claim.   *See Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1036 (10th Cir. 1998).

Plaintiff does not dispute that her amended complaint provides clear notice that the Court has diversity jurisdiction over her claims, but she does dispute that her amended complaint was the "amended pleading" or "other paper" Defendant received from which it "first" could ascertain that her case was one which is or had become removable.   *See* § 1446(b)(3).   Plaintiff identifies several "other paper[s]" that she contends placed Defendant on notice—as early as April 7, July 31, and/or September 2, 2014—that her *Hovet* claim was removable.   Plaintiff does not establish, however, in law or fact, that she had a pending *Hovet* claim prior to the filing of her amended complaint or that Defendant was aware of the jurisdictional facts giving rise to removal of a *Hovet* claim prior to its receipt of the amended complaint on October 27, 2014.   Thus, because Defendant first could ascertain that Plaintiff's claim was subject to removal on October 27, 2014, and because Defendant filed its Notice of Removal 29 days thereafter, the Court holds that Defendant timely removed the amended complaint within the prescribed 30-day removal period. Accordingly, the Court denies Plaintiff's Motion for Remand to the extent it seeks remand on the ground that Defendant failed to comply with the deadline for removal contained in Section 1446(b)(3).

A.   <u>New Mexico Law Precluded Plaintiff from Bringing a *Hovet* Claim Prior to Obtaining a Judgment in her Favor against Farmers' Insured.</u>

Throughout her briefing, Plaintiff repeatedly asserts that she had a pending *Hovet* claim prior to filing her amended complaint and charges Farmers with litigating her *Hovet* claim during the pendency of the state court action.[3]   Defendant denies both that Plaintiff had a pending *Hovet* claim and that it litigated a *Hovet* claim in state court, arguing instead that Plaintiff first asserted her *Hovet* claim on October 19, 2014, when she filed her amended complaint, and that Defendant first received notice that the amended complaint was subject to removal on October 27, 2014, when Plaintiff served the complaint on Farmers.

In her amended complaint, Plaintiff alleges statutory bad faith claims under Sections 59A-16-20(E), (G), and (H) of the Trade Practices and Frauds Article.   The TPFA "prohibits insurance companies from engaging in certain 'unfair and deceptive practices.'"   *Hovet v. Allstate*, 89 P.3d 69, 70-71 (N.M. 2004) (quoting NMSA 1978, § 59A-16-20(E) (1997)).[4]

---

[3]   Plaintiff's characterization of her claims in her original complaint is not consistent throughout her briefing.   Although she repeatedly asserts that she had a "pending" *Hovet* claim against Farmers that was bifurcated, [Doc. 7 at 3 (asserting that "Defendant Farmers . . . sought and obtained[] . . . bifurcation of Plaintiff's common law claims and its *Hovet* claim."); Doc. 14 at 1 (asserting that "it is undisputed that in the underlying action *Farmers specifically acknowledged Plaintiff had a pending Hovet claim against Farmers and, as a result, Farmers specifically sought and obtained bifurcation of that claim*"); *id.* at 5 (arguing that in the state litigation "bifurcation separated [Plaintiff's] claim of negligence from Plaintiff's bad faith claim against Farmers"); *id.* (claiming that the court "stay[ing]" her *Hovet* claim did not render her *Hovet* claim "'new'" when the court lifted the stay)], she also periodically concedes that she only had the intent to file a *Hovet* claim, [Doc. 7 at 4 (asserting that Farmers filed documents in state court "denoting Plaintiff *intended* to seek relief under *Hovet*") (emphasis added); *id.* at 2 (arguing that "Defendant Farmers was keenly aware Plaintiff would immediately pursue her *Hovet* claim . . . against Defendant Farmers *after* she prevailed against Defendant Farmers' insured at trial") (emphasis added)].   The Court assumes that Plaintiff intended to argue that she had a *Hovet* claim pending in state court prior to filing her amended complaint because she repeatedly relies upon this contention in support of her Section 1446(b)(3) untimeliness argument.

[4]   These prohibited practices include under subsection (E), "not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear," § 59A-16-20(E), under subsection (G), "compelling insureds to institute litigation to recover amounts due under policy by offering substantially less than the

"Further, Section 59A-16-30 of the [TPFA] grants a right of action to any person covered by [the TPFA] 'who has suffered damages as a result of a violation of that article by an insurer or agent.'" *Id.* at 71 (quoting NMSA 1978, § 59A-16-30 (1990)).

Plaintiff brings her TPFA claims against Farmers pursuant to the New Mexico Supreme Court's decision in *Hovet v. Allstate*, which authorizes a third-party claimant, such as Plaintiff, to assert TPFA claims against a defendant-tortfeasor's liability insurer. *See id.* In *Hovet*, the Supreme Court examined whether the TPFA "confers upon a victim of an automobile accident a direct right of action against the insured's automobile liability insurance company, when the liability insurer fails to make good-faith efforts, as defined by Section 59A-16-20(E), to settle a liability claim." *Id.* The court concluded that a third-party claimant has a right to bring a cause of action for alleged violations of the TPFA, because "when members of the driving public are twice made victims, first by actionable negligence of an insured driver and then by an insurance company's intransigence" arising out of its bad faith insurance practices that violate Article 16, these third-party-claimant "victims will not be abandoned without a remedy." *Id.* at 76. The court, however, subjected this third-party right to certain "preconditions." *Id.* In particular, the court provided that "any such action for unfair claims practices based on failure to settle may only be filed *after* the conclusion of the underlying negligence litigation, and *after* there has been a judicial determination of fault in favor of the third party and against the insured." *Id.* The court further held that "a third-party claimant may not sue both the insured and the insurer in the same lawsuit," and that "the third-party claimant will *not even have an action* under Section

---

amounts ultimately recovered in actions brought by such insureds when such insureds have made claims for amounts reasonably similar to amounts ultimately recovered," § 59A-16-20(G), and under subsection (H), "attempting to settle a claim by an insured for less than the amount to which a reasonable person would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application," § 59A-16-20(H).

59A-16-20(E), unless and until there has been a judicial determination of the insured's fault." *Id.* at 76-77 (emphasis added).

As evidence of her purportedly-pending *Hovet* claim, Plaintiff points to two July 31, 2014, stipulated orders establishing that Farmers sought and obtained bifurcation of her claim against it from her claim against Garcia.   Plaintiff asserts that this evidence proves that Farmers bifurcated what she characterizes as her *Hovet* claim, which, in turn, establishes, in Plaintiff's estimation, that she had a *Hovet* claim in the first instance that could be bifurcated.   Plaintiff's assumption that she had a pending *Hovet* claim against Farmers at any time prior to obtaining a favorable judgment against Garcia on her negligence claim is not supported by law.

Pursuant to *Hovet*, Plaintiff could not assert, and indeed did not even have, a TPFA claim against Farmers on July 31, 2014.  A third-party claimant's TPFA claim against a tortfeasor's liability insurer for bad faith insurance practices does not accrue unless and until the claimant obtains a favorable judgment on the merits against the insured-tortfeasor.  *See id.*  Thus, it was not until the state court entered judgment in Plaintiff's favor against Garcia pursuant to the jury's August 12, 2014, verdict that Plaintiff's *Hovet* claim accrued.  Accordingly, the Court rejects Plaintiff's contention that she had a pending *Hovet* claim on July 31, 2014 (or on any other date before the state court entered judgment in Plaintiff's favor on her negligence claim).

Plaintiff's argument that "consistent with the requirement to stay bad faith claims pending the determination of negligence," [Doc. 14 at 5], Farmers sought and obtained bifurcation of Plaintiff's *Hovet* claim from her negligence claim, also is unsupported by law because, contrary to Plaintiff's contention, neither *Hovet* nor the New Mexico Supreme Court's decisions in *Raskob v. Sanchez*, 970 P.2d 580 (N.M. 1998), and *Martinez v. Reid*, 46 P.3d 1237 (N.M. 2002), require bifurcation of a *Hovet* claim from a negligence claim.  To the contrary, *Hovet* specifically

9

precludes a plaintiff from pursuing a *Hovet* claim at the same time as a negligence claim, provides that a third-party claimant may not sue both the insured and the insurer "in the same lawsuit," 89 P.3d at 76, and contains no exception from these rules for *Hovet* claims that are bifurcated. Indeed, the *Hovet* Court expressly declined to allow a *Hovet* claim to be filed and stayed during the pendency of the underlying action. *Id.* at 76. Instead, *Hovet* holds that a third-party claimant does not have a *Hovet* claim unless and until she obtains a favorable judgment on the question of liability and damages against the insured. *See id.* at 76-77.

Moreover, Plaintiff's argument is not supported by law because while Plaintiff correctly notes that *Raskob* authorized her to join Farmers to her original negligence action against Garcia and while Plaintiff correctly notes that *Martinez* required bifurcation of her *Raskob* claim against Farmers from her negligence claim against Garcia, [Doc. 14 at 4], Plaintiff misapplies these holdings to the facts of her case. Neither *Raskob* nor *Martinez* apply to a third-party claimant's *Hovet* claim against a tortfeasor's liability insurer. Thus, Plaintiff improperly concludes that *Raskob* authorized her to bring a *Hovet* claim and that *Martinez* required her to bifurcate her *Hovet* claim from her negligence claim.

In *Raskob*, an injured plaintiff sued both the tortfeasor and the tortfeasor's liability insurer for damages arising out of an automobile accident. *See* 970 P.2d at 580. The trial court dismissed the insurer as an improper party, the plaintiff appealed, and the Court of Appeals certified the question to the Supreme Court whether an injured party has a "direct action" against a tortfeasor's liability insurer.[5] *See id.* The New Mexico Supreme Court acknowledged that "[t]he

---

[5] "The term 'direct action' may be misleading, because [*Raskob*] envision[s] joinder of the insurance company along with the alleged tortfeasor; that is, the plaintiff could not proceed against the insurer alone," and yet still refers to the action as "direct." *Martinez*, 46 P.3d at 1240-41 (citing *Lopez v. Townsend*, 25 P.2d 809, 814 (N.M. 1933) ("[T]he result is that there may be an

general rule is that there is no privity between an injured party and the insurer of the negligent defendant in the absence of a contractual provision or statute or ordinance to the contrary; therefore, the injured party has no claim directly against the insurance company." *Id.* at 581 (citation omitted).   The court explained, however, that "'an insurance policy procured by force of legislative enactment inures to the benefit of any injured member of the public, and the insurance company is a proper party defendant in a suit for damages by that injured party, unless the statute or ordinance in its terms *negatives the idea of such joinder.*'"  *Id.* (quoting *Breeden v. Wilson*, 273 P.2d 376, 380 (N.M. 1954)).   The court concluded that the Mandatory Financial Responsibility Act contains no language negating joinder of an insurer as a party defendant, and therefore held that the insurer was a proper party to the suit.   *See id.* at 582.   In *Martinez*, the New Mexico Supreme Court considered whether, when a plaintiff joins a tortfeasor's liability insurer to the plaintiff's negligence claim against the tortfeasor-insured, the court should bifurcate the negligence claim from the *Raskob* claim to prevent the jury from learning of the presence of insurance prior to deciding liability and damages.   *See* 46 P.3d at 1242.   The *Martinez* court held that, "[i]n the ordinary negligence case tried to a jury where a defendant's liability insurer has been joined, the trial judge should bifurcate the trial and take steps in the first phase to avoid disclosing the presence of insurance to the jury."   *Id.* at 1244.

While Plaintiff correctly asserts that Farmers was a proper party under *Raskob* and that the state court was required to bifurcate her *Raskob* claim against Farmers under *Martinez*, Plaintiff nonetheless assumes that her *Raskob* claim was one and the same as her *Hovet* claim and therefore that *Martinez* required bifurcation of her *Hovet* claim.   To provide legal support for her inferential

immediate suit to which both insurer and assured are parties defendant, but not an immediate suit against the insurer alone.")) (additional citations omitted).

leap, Plaintiff erroneously asserts that *Hovet* "extended" the holdings of *Raskob* and *Martinez* to require that negligence claims be bifurcated from statutory bad faith claims.   [Doc. 14 at 4]. Then, having pointed to this so-called law authorizing simultaneous *Hovet* and negligence claims if bifurcated, Plaintiff concludes that it was her *Hovet* claim—and not her *Raskob* claim—for which Defendant sought and obtained bifurcation.   Although this construction benefits Plaintiff, by providing support for her contention that the 30-day clock started running at the time of the July 31, 2014, bifurcation, it is not supported by law.

Plaintiff both misunderstands, and misapplies, New Mexico law.   *Hovet* was not an extension of *Raskob* and *Martinez*.   *Raskob* and *Martinez* concern an injured party's claim against a liability insurer to enforce the insurer's contractual duty under the insurance policy to pay damages incurred by its tortfeasor-insured and the bifurcation of the plaintiff's negligence claim against the tortfeasor from its *Raskob* claim against the insurer, whereas *Hovet* concerns a plaintiff's statutory claim for bad faith and unfair insurance practices, is silent on the question of bifurcation, and holds that no action exists unless and until the plaintiff obtains a favorable judgment against the insured on the question of fault.   Indeed, the *Hovet* court explicitly disclaimed that its holding had any impact at all on the holdings of *Raskob* or *Martinez*, explaining that *Hovet* addresses a statutory cause of action against a liability insurer based on the New Mexico Insurance Code and *Raskob* and *Martinez* address common law claims against a liability insurer. *See Hovet*, 89 P.3d at 75 n.2.   Thus, Plaintiff's attempt to merge the *Raskob/Martinez* line of cases with the holding of *Hovet* and to conclude that the cases together stand for the proposition that a claimant may bring simultaneous *Hovet* and negligence claims if bifurcated is not supported by law.   Plaintiff's *Hovet* claim was not pending on July 31, 2014, because at that time, under New Mexico law, Plaintiff's *Hovet* claim could not be filed.

12

B.   Neither the Original Complaint nor any "Other Paper" Establish that Plaintiff had a Pending *Hovet* Claim Prior to Obtaining a Judgment in her Favor against Garcia.

Not only is Plaintiff's contention that her *Hovet* claim against Farmers was pending on July 31, 2014, unsupported by law, it also is unsupported by fact.   Neither Plaintiff's original complaint nor the July 31, 2014, stipulated orders concerning bifurcation support her contention that she had a pending *Hovet* claim against Farmers.   Rather, the complaint and orders establish only that it was Plaintiff's *Raskob* claim against Farmers that the state court bifurcated.

In her original complaint, Plaintiff's only allegations against Farmers are contained in paragraphs three and eight.   In paragraph three, Plaintiff alleges that "Farmers . . . is a proper party to this action, as Farmers Insurance Group, issued a policy of indemnity insurance whereby Farmers Insurance Group, agreed to pay all sums which may be due to Plaintiff from the Defendants as a result of the accident which is the subject of this litigation."   [Doc. 9-1 ¶ 3].   In paragraph eight, Plaintiff alleges that "Defendant [Garcia] is responsible for Plaintiff's damages and Farmers Insurance Group is also responsible for the damages suffered by the Plaintiff."   [*Id.* ¶ 8].

Paragraph three confirms that Plaintiff's claim against Farmers is, consistent with *Raskob*, derivative of her claim against Garcia for negligence and based solely upon Farmers' duty under its policy of insurance to "pay all sums" that may be due to Plaintiff "*as a result of the accident which is the subject of this litigation*."   [*Id.* ¶ 3 (emphasis added)].   The complaint expressly limits Defendant's exposure to damages arising out of the automobile accident itself, an exposure that arose from Defendant's contractual duty to indemnify Garcia, and that did not arise from any direct harm that Defendant allegedly inflicted upon Plaintiff through its unfair or bad faith insurance practices.   A review of each of the eight paragraphs of the complaint confirms that it

contains no independent allegations of wrongful conduct against Defendant Farmers and no allegations of damages arising out of wrongful conduct by Farmers; rather, it contains only allegations of wrongful conduct by Garcia and damages arising out of wrongful conduct by Garcia. [*Id.* ¶¶ 1-8].   The complaint's allegations thus confirm that Plaintiff only asserted a claim against Farmers premised upon its derivative liability for Garcia's negligence pursuant to *Raskob* and not premised upon its statutory liability for its own bad faith insurance practices pursuant to *Hovet*.

Likewise, the state court's July 31, 2014, stipulated order granting bifurcation of Plaintiff's claim against Farmers from Plaintiff's claim against Garcia, and the July 31, 2014, stipulated pretrial order—two "other paper[s]" that Plaintiff claims placed Defendant on notice that she had a pending *Hovet* claim—do not indicate that it was a pending *Hovet* claim that the state court bifurcated.   The stipulated orders provide only that Plaintiff's "claims" against Farmers are bifurcated, [Doc. 7-5 at 1 (providing that "pursuant to *Hovet* and its progeny, the parties stipulate to the bifurcation of Plaintiff's claims against Defendant Farmers . . . from Plaintiff's claims against Defendant Janet Garcia"); Doc. 7-4 (stipulating that the matter came before the court to "Bifurcate Plaintiff's claims against Defendant Farmers . . . from Plaintiff's claims against Defendant Janet Garcia")], and that, "pending the outcome" of her trial against Garcia, Plaintiff may then pursue "her claims, if any," against Defendant, [*id.*; Doc. 7-5].   The orders do not indicate that the court bifurcated a *Hovet* claim as Plaintiff asserts.

The stipulated orders, at best, establish only that Defendant was aware that Plaintiff *intended* to bring a *Hovet* claim.   This showing of future intent, however, is not sufficient to render her claim one which "is or has become removable."   28 U.S.C. § 1446(b)(3).   Under Section 1446(b)(3), the only relevant inquiry is when "it may first be ascertained that the case is one which is or has become removable," *id.* (emphasis added), and it goes without saying that a

future claim, not yet filed, cannot serve as the basis for statutory removal and, most certainly, cannot support subject matter jurisdiction in this Court.   Thus, for these reasons, the July 31, 2014, stipulations do not constitute "other paper[s]" that triggered the running of the 30-day removal period prescribed by Section 1446(b)(3).

C.       Plaintiff Fails to Establish that She had a Claim Subject to Removal Prior to Defendant's Receipt of the Amended Complaint.

Even if the Court had concluded that Plaintiff's *Hovet* claim was pending prior to October 19, 2014, which is the date on which she filed her amended complaint, the Court nonetheless would reject Plaintiff's argument that an awareness of her *Hovet* claim alone started Section 1446(b)(3)'s 30-day clock.   Plaintiff identifies four "other paper[s]" that she maintains started the running of the 30-day clock.   First, Plaintiff relies on Farmers' April 7, 2014, reply in support of its motion to vacate a settlement conference, in which Farmers asserts that "Plaintiff must await the conclusion of this case before she can proceed with any cause of action or discovery against Farmers" because the "New Mexico Supreme Court has held that any action for unfair claims practices based on a failure to settle may only be filed AFTER the conclusion of the underlying negligence litigation and AFTER there has been a judicial determination of fault in favor of the third party and against the insured."   [Doc. 7-3, ¶ 6].   Plaintiff also relies on the state court's July 31, 2014, stipulated order bifurcating Plaintiff's "claims" and the July 31, 2014, stipulated pretrial order in which Defendant agreed to bifurcate Plaintiff's "claims."   [Docs. 7-4, 7-5].   Plaintiff cites to the stipulated language in both orders indicating that, pending resolution of trial, Plaintiff then may pursue "her claims, if any" against Farmers.   [*Id.*].   Finally, Plaintiff relies on her counsel's September 2, 2014, letter, to Farmers' counsel inquiring whether Farmers would accept service of Plaintiff's amended complaint or require Plaintiff to serve the Superintendent of

Insurance.   [Doc. 7-1].   Plaintiff asserts that all of these documents establish that Farmers had notice that she had a pending *Hovet* claim on those dates.

Assuming that the documents in fact establish knowledge, as Plaintiff suggests, notice of a *Hovet* claim alone is not sufficient to trigger the running of the 30-day limitation period prescribed by Section 1446(b)(3).   Subsection (b)(3)'s trigger is the filing of an amended pleading or other paper from which "it may first be ascertained that the case is one which is or has become removable."   28 U.S.C. § 1446(b)(3).   Establishing that Defendant was aware that Plaintiff intended to file a *Hovet* claim, regardless of whether this awareness arose as early as April 7, July 14, or September 2, 2014, in and of itself, does not trigger the 30-day clock.

Under Section 1446(b)(3), the clock begins running when an amended pleading or "other paper" provides Defendant with notice that both bases for diversity jurisdiction in this Court exists, *i.e.*, an amount in controversy in excess of the minimum statutory threshold of $75,000 and complete diversity of citizenship between the parties.   Our Tenth Circuit has confirmed that, "[i]f the statute is going to run, the notice ought to be unequivocal."   *DeBry v. Transamerica Corp.*, 601 F.2d 480, 489 (10th Cir. 1979).   Thus, our Tenth Circuit "requires clear and unequivocal notice from the pleading itself, or a subsequent 'other paper' such as an answer to interrogatory," that a claim is one which is or has become removable.   *Akin*, 156 F.3d at 1036.

The "other paper[s]" Plaintiff identifies fall short of providing Defendant with "clear and unequivocal" notice that Plaintiff's purportedly pending *Hovet* claim satisfied both jurisdictional thresholds for removal.   First, on April 7, 2014, and July 31, 2014, Garcia was still a party to the litigation and the parties therefore lacked complete diversity of citizenship because both Plaintiff and Garcia are citizens of New Mexico.   Thus, Defendant's reply and the state court's stipulations were not capable of placing Defendant on notice that Plaintiff had a pending *Hovet* claim that was

16

subject to removal.

Second, although by September of 2014 the state court had dismissed Garcia from the action and the parties therefore were diverse, the September 2, 2014, letter from Plaintiff's counsel to Farmers' counsel inquiring whether Farmers would accept service of the amended complaint did not provide Defendant with clear and unequivocal notice that Plaintiff's *Hovet* claim exceeded the minimum jurisdictional threshold for the amount in controversy.   The letter itself did not provide Defendant with notice of any facts providing clear and unequivocal notice that the *Hovet* claim implicated an amount in controversy in excess of $75,000.   In addition, Plaintiff concedes that Farmers' counsel refused to accept service of the amended complaint, [Doc. 7 at 5], and the letter does not indicate that Plaintiff's counsel enclosed a copy of the amended complaint for Farmers review.   [Doc. 7-1].   Defendant properly asserts that "without seeing the Amended Complaint and without the claims actually being asserted, [it] had no way to ascertain whether Plaintiff's new civil action asserting *Hovet* Claims would be removable."   [Doc. 9 at 7]. Defendant points out that, "[f]or example, in the Amended Complaint, Plaintiff could have expressly sought less than the $75,000 minimum amount in controversy or Plaintiff could have added a non-diverse defendant such as Farmers' employee who resides in New Mexico."   [*Id.*].

The Court agrees.   The September 2, 2014, letter did not provide Defendant with clear and unequivocal notice that Plaintiff was asserting a *Hovet* claim that satisfied the jurisdictional prerequisites for diversity jurisdiction.   To the contrary, had Defendant removed Plaintiff's claim based upon the September 2, 2014, letter alone, this premature removal would have been "objectively unreasonable" and could have placed Defendant at risk of being sanctioned.   *Cf. Garret v. Cook*, 652 F.3d 1249, 1256 (10th Cir. 2011) (citing *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 697 (9th Cir. 2005) (noting premature removal can lead to imposition of Rule 11

sanctions)).   The Court therefore holds that the September 2, 2014, letter did not start the 30-day clock.

Because none of the "other paper[s]" upon which Plaintiff relies placed Farmers on notice that her claim was subject to removal, and because Defendant has established that it did not have notice that Plaintiff's claim was subject to removal until Plaintiff served its amended complaint on October 27, 2014, the Court concludes that the 30-day removal period prescribed by Section 1446(b)(3) did not expire until 30 days after Defendant was served.   Defendant filed its Notice of Removal on November 25, 2014, which was one day prior to the expiration of the 30-day period and therefore timely.   Accordingly, the Court denies Plaintiff's Motion for Remand to the extent it is premised upon Defendant's failure timely to remove the amended complaint within the 30-day window for removal prescribed by Section 1446(b)(3).

II.   Defendant Timely Filed its Notice of Removal within the One-Year Removal Period Prescribed by 28 U.S.C. Section 1446(c).

Plaintiff argues that the Court should grant her Motion for Remand because Defendant's removal was untimely pursuant to 28 U.S.C. Section 1446(c).   Section 1446(c) provides that, "[a] case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." § 1446(c)(1).   Plaintiff asserts that Defendant removed her amended complaint over two years after she filed her original complaint and therefore removal was untimely.   Defendant, in contrast, contends that a third-party claimant's TPFA claim brought pursuant to *Hovet* is a separate and distinct action from an underlying negligence claim and that it was the filing of the *Hovet* claim—not the underlying negligence claim—that triggered the one-year period.

The question of timeliness under Section 1446(c) turns on whether Plaintiff's amended complaint asserting a *Hovet* claim constituted a new "action" separate and distinct from the original complaint litigated in state court, in which case the one-year bar contained in Section 1446(c) would not preclude removal, or whether the *Hovet* claim was part of the same action, in which case the one-year bar would preclude removal.   Both this district and the District of Kansas have answered this question on analogous facts.   *See, e.g.*, *Rivera v. Fast Eddie's, Inc.*, 829 F. Supp. 2d 1088, 1092 (D.N.M. 2011) (holding that the one-year "timeliness issue turns on whether the current suit is the same 'action' as the underlying suit between Rivera and Fast Eddie's, commenced in 2008," for, "[i]f so, then the one-year time limit would bar a 2011 removal by Valley Forge"); *Nungesser v. Bryant*, No. 07-1285-WEB, 2007 WL 4374022, *5 (D. Kan. Dec. 7, 2007) (asserting that "[t]he disposition of the instant motion boils down to [the] rather simple question[whether the tortfeasor] Bryant's bad faith claim against [insurer] EMCASCO [is] part of the same 'civil action' as [the plaintiff] Nungesser's tort action against Bryant," and explaining that "[i]f it is, then removal would clearly be barred by (among other things) the one-year time limit in § 1446[(c)]") (citation omitted).

In *Rivera v. Fast Eddie's, Inc.*, the District of New Mexico held that the one-year outer limit on removal prescribed by Section 1446(c) did not bar removal of a bad faith claim against an insurer when that claim was unavailable under state law until an underlying judgment had been entered against the insured.   *See* 829 F. Supp. 2d at 1092-93.   In *Rivera*, the plaintiff brought a lawsuit in 2008 for personal injuries sustained on a guided four-wheeler tour against a defendant-tortfeasor that maintained two applicable insurance policies, one issued by Philadelphia Insurance Company and the other issued by Valley Forge Insurance Company.   *See id.* at 1090. Philadelphia Insurance provided the defendant-tortfeasor with a defense for the underlying

19

personal injury claims and ultimately settled the claims brought by the plaintiff in 2011.  *See id.*  Valley Forge Insurance was not named as a party, and did not participate in the defense or contribute to the settlement of the plaintiff's claims, but it was "involved in some capacity with the proceedings in state court."  *Id.*  The defendant-tortfeasor, as part of the settlement, assigned its rights against Valley Forge to the plaintiff.  *See id.*  After receiving the assignment, the plaintiff filed a third-party complaint against Valley Forge, asserting claims for bad faith and breach of contract for Valley Forge's failure to provide a defense to the defendant.  *See id.*  Valley Forge, after being served with the third-party complaint, removed the case to federal court, and the plaintiff filed a motion for remand, *see id.*, arguing that removal was improper under the one-year limitation contained in Section 1446(c) because "the removal was filed in 2011, more than a year from the filing of the original complaint in 2008."  *Id.* at 1091.

In *Rivera*, the timeliness issue, as framed by the Court "turn[ed] on" whether the current suit was the "same 'action'" as the underlying suit between the plaintiff and the defendant-tortfeasor, which commenced in 2008, for, if so, the one-year time limit barred the 2011 removal by Valley Forge.  *Id.* at 1092.  The *Rivera* court held that the removed bad faith and breach of contract claims were "best characterized as a separate suit" from the underlying claims between the plaintiff and the defendant.  *Id.*  In support of this conclusion, the court reasoned that "[n]o claims were asserted against Valley Forge until 2011, and indeed the primary factual underpinning of those claims appears to be Valley Forge's non-participation in the December 8, 2010, settlement conference," and, "[m]ore importantly, Rivera can only assert claims against Valley Forge as a result of the assignment which formed part of the settlement agreement that effectively ended the underlying suit."  *Id.*  The court concluded that "[t]hese facts weigh[ed] heavily in [its] decision to treat the Third-Party Complaint by Rivera against Valley Forge as a

separate civil action for purposes of removal." *Id.*   The court further reasoned that the plaintiff's position would have "anomalous results," for "the year-long countdown for removal would begin and end before any claims were asserted against Valley Forge and before the factual basis for those claims occurred." *Id.* at 1092-93.   Thus, the Court held that "for purposes of § 1446[(c)] the 'civil action' commenced on August 8, 2011, with the filing of the Third-Party Complaint. Accordingly, Valley Forge's removal on September 15, 2011[,] was timely." *Id.* at 1093.

In so holding, the *Rivera* Court adopted the reasoning of *Nungesser v. Bryant*, a case decided by the District of Kansas involving similar facts.   *See id.* (citing *Nungesser*, 2007 WL 4374022).   In *Nungesser*, the plaintiff filed a personal injury suit on January 6, 2003, against an insured-tortfeasor for damages arising out of an automobile accident.   *See* 2007 WL 4374022, at *1.   The defendant-tortfeasor, in turn, filed a third-party complaint against his liability insurer, EMCASCO, asserting a claim for bad faith and negligent failure to settle the underlying claims brought by the plaintiff.   *See id.*   EMCASCO moved to dismiss, arguing that under Kansas law, the defendant's third-party complaint for bad faith failure to settle was premature until the defendant's liability was reduced to a judgment.   *See id.*   The state court, in error, denied the motion to dismiss, and the parties subsequently attended mediation.   *See id.* at *1-2, 3.   During the mediation, the parties reached a conditional agreement in which the defendant-tortfeasor agreed to confess to a judgment on the claims asserted by the plaintiff, the plaintiff agreed not execute the judgment until the insured obtained a judgment against his insurer EMCASCO, and the defendant agreed partially to assign his rights against EMCASCO to the plaintiff so they jointly could pursue a bad faith/negligent failure to settle claim against EMCASCO.   *See id.* at *2.   A jury trial was held on the defendant-insured's third-party claim against EMCASCO and the court entered judgment against EMCASCO for negligent failure to settle.   *See id.* at *3.   EMCASCO

21

subsequently appealed to the Kansas Supreme Court, which reversed, holding that the trial court erred by denying EMCASCO's motion to dismiss because "'an insured's action against his or her insurer for negligent or bad faith failure to settle a case must wait for liability of the insured to be decided,'" and "[a] defendant in an auto liability case may not sue his or her insurer on such claims until the tort claim against him or her has been reduced to a judgment." *Id.*  The Kansas Supreme Court remanded the case to the state trial court because it could not "determine how EMCASCO's presence in the case had altered subsequent events, and as a result" the court concluded that "the jury's verdict and the . . . judgment must be vacated and the mediation agreement declared 'null and void.'" *Id.*

At a second mediation, again the defendant-tortfeasor thereafter confessed judgment on the plaintiff's underlying personal injury claims, and the plaintiff agreed to permit the defendant to pursue his bad faith/failure to settle claims against his insurer EMCASCO; thereafter, the trial court entered judgment in favor of the plaintiff against the defendant, and the trial court then granted the defendant leave to file his third-party petition against EMCASCO (which became viable when the trial court entered a liability judgment against the defendant).  *See id.* at *4.  On August 17, 2007, more than four years after the plaintiff had filed the original personal injury complaint, the defendant filed his third-party bad faith/failure to settle complaint against EMCASCO, EMCASCO removed the third-party complaint, and the defendant/third-party plaintiff moved to remand on the ground that the removal fell outside the one-year outer limit for removal.  *See id.*

Despite the convoluted procedural history, the *Nungesser* court identified the question on remand as "boil[ing] down to a rather simple question:  is [the defendant/third-party claimant's] bad faith claim against EMCASCO part of the same 'civil action' as [the plaintiff's] tort action

22

against [the defendant]? . . .   If it is, then removal would clearly be barred by (amongst other things) the one-year time limit in § 1446[(c)]."   *Id.* at *6 (internal citations omitted).   The court concluded that the one-year limitation did not bar the removal of the bad faith/failure to settle claim because the claim "must be considered a distinct 'civil action' for purposes of § 1441(a) and [(c)]."   *Id.*   In so holding, the court relied heavily upon the Kansas Supreme Court's prior ruling that the bad faith/failure to settle claim against EMCASCO was improper, that the claim did not accrue until the plaintiff obtained a tort judgment against the insured, that the claim needed to be "brought as a separate action," and that it was "error to allow the insurer to be brought into the same proceeding."   *Id.* at *7.   Specifically, the *Nungesser* court stated with conviction,

> Whatever case label one may attach to the current post-judgment petition [for bad faith] one thing is clear:  the Supreme Court required the bad faith claim to be brought as a separate action.  It declared the joinder of the claims improper and effectively severed the bad faith claim from the tort action.   Under these circumstances, the court concludes EMCASCO has met its burden of showing there is no possibility that [the defendant/third-party plaintiff] could establish a cause of action against it in the tort action.

*Id.*

In addition to deeming pivotal the Supreme Court's holding, the *Nungesser* court also concluded that garnishment law in Kansas supported the conclusion that the bad faith claim was a distinct and separate action.   *See id.* at *6.   The court explained that the Supreme Court previously had held that an injured party may bring a bad faith claim against an insured's liability insurer by way of a garnishment proceeding, *see id.* at *5 (explaining that the Supreme Court of Kansas has "reiterated the propriety of asserting a bad faith claim in a garnishment proceeding" where a plaintiff-victim "st[ands] in the place of the insured" and "assert[s] the bad faith claim [of the insured] in garnishment") (citing *Bollinger v. Nuss*, 449 P.2d 502 (Kan. 1969)), and that since

this holding, "nearly all claims of bad faith against an insurer in Kansas appear to have been asserted by way of garnishment proceedings initiated after judgment on the underlying tort claim," *id.* The *Nungesser* court, citing *Smotherman v. Caswell*, 755 F. Supp. 346 (D. Kan. 1990), further noted that the District of Kansas had held that, because such a garnishment proceeding under federal removal standards was a separate civil action for purposes of removal, the one-year bar contained in Section 1446 "started to run from commencement of the garnishment proceeding, not from service of the complaint in the underlying tort action." *Id.* at *6 (citing *Smotherman*, 755 F. Supp. at 349).

While the *Nungesser* court acknowledged that the "procedural footing" of the case before it was distinguishable from that of the garnishment cases, the court concluded that "the principles expressed in those cases" were the same. *See id.* at *6. "Just as in a garnishment situation, the bad faith claim did not exist until liability in the tort action had been reduced to a final judgment. And just as in a garnishment situation, [the defendant/third-party plaintiff's] bad faith cause of action is 'a suit involving a new party and litigating the existence of a new liability.'" *Id.* at *7. That the state court allowed the defendant/third-party plaintiff to file its bad faith claim against EMCASCO in the same civil action was not of consequence. Indeed, the court held that the "bad faith claim against EMCASCO was a separate civil action, notwithstanding the state district court's allowance of the third-party petition under the same case number," for "[i]n either event—whether such a claim is asserted by garnishment or by a post-judgment third-party complaint—it is separate from the tort action concerning the injuries suffered by the plaintiff." *Id.* Thus, the court concluded that, under federal law governing removal, the bad faith claim constituted a separate action that commenced for purposes of triggering Section 1446's one-year removal period when the defendant filed its third-party complaint. *See id.* at *6-7.

24

The Court holds that, consistent with *Rivera* and *Nungesser*, Plaintiff's Amended Complaint asserting *Hovet* claims against Farmers commenced a separate and distinct action from the action initiated by her original complaint.   Pivotal to the holdings of *Rivera* and *Nungesser* was that, as a matter of law, the plaintiff did not have a cause of action at the time of the original action.   *See Rivera*, 829 F. Supp. 2d at 1092 (explaining that weighing "heavily" in the court's decision was (a) that the factual basis for the bad faith claim arose as a result of conduct that occurred during the course of the tort litigation and (b) that the claim accrued only as a result of the settlement of the tort litigation); *Nungesser*, 2007 WL 4374022, at *6-7 (repeatedly emphasizing that the third-party plaintiff did not have a claim for bad faith until the conclusion of the underlying tort litigation when it incurred a tort liability and that the Supreme Court on appeal had held that the third-party plaintiff could not bring his claim for bad faith against his insurer in the same action as the plaintiff's negligence action).   So too, on the facts here, it is equally compelling that Plaintiff did not have a *Hovet* action at the time of the state court litigation.   The New Mexico Supreme Court explicitly held in *Hovet* that a "third-party claimant will not even have an action under Section 59A-16-20(E), unless and until there has been a judicial determination of the insured's fault and the amount of damages awarded in the underlying negligence action," *id.* at 76-77, and that "a third-party claimant may not sue both the insured and the insurer *in the same lawsuit*," *id.* at 76 (emphasis added).   These characteristics of a *Hovet* claim render it, as in *Rivera* and *Nungesser*, a separate and distinct action from Plaintiff's *Raskob* and negligence claims.

Also pivotal to the holding in *Rivera*, and equally persuasive here, is that the factual underpinnings of the bad faith claim against the insurer did not exist at the time the original tort action was filed.   Rather, it was Valley Forge's failure to participate in a settlement conference conducted during the pendency of the tort litigation that formed the "primary factual

25

underpinning[]" of the plaintiff's bad faith claim.   *Rivera*, 829 F. Supp. 2d at 1092.   The factual underpinnings of Plaintiff's *Hovet* claim likewise arose by virtue of Farmers' conduct that occurred during the pendency of the state tort litigation, [*see, e.g.*, Doc. 1-1 ¶¶ 40-44, 51, 53, 54, 69 (premising her bad faith claim against Farmers on conduct occurring during the course of the underlying state tort litigation, including but not limited to failing to attend a mediation, imposing a take-it-or-leave-it offer of $1,000, and pursing defenses known to be false at trial)], and thus, without these facts having occurred, Plaintiff's *Hovet* claim could not be brought at the same time as her *Raskob* and negligence claims.   Just as the *Rivera* court concluded that "anomalous results" would follow from starting the one-year clock on the date of the original tort action, *see* 829 F. Supp. 2d at 1092-93 (explaining that "the year-long countdown for removal would begin and end before any claims were asserted against Valley Forge and before the factual basis for those claims occurred"), so too would such irregular results occur here:   The one-year clock would begin and end before Plaintiff asserted her *Hovet* claim against Farmers and before all or substantially all of the facts forming the basis for her claim had transpired, and the clock would begin and end before Plaintiff's *Hovet* claim even accrued.   The Court declines to impose such results.

Thus, for the foregoing reasons, as in *Rivera* and *Nungesser*, the Court holds that a bad faith action for statutory violations of the TPFA brought by a third-party claimant pursuant to *Hovet* constitutes a separate and distinct action from the underlying tort litigation that—in both law and fact—establishes the basis for the *Hovet* claim.   Plaintiff's statutory bad faith action did not accrue until the conclusion of her underlying tort action when Plaintiff obtained a favorable judgment against Garcia.   Moreover, New Mexico law precluded Plaintiff from asserting her bad faith action in the same suit as her tort action.   Furthermore, the factual underpinnings that form the basis of Plaintiff's *Hovet* claim transpired during the pendency of the underlying tort litigation

itself.   Plaintiff therefore could not have brought her *Hovet* claim at the same time as her negligence and *Raskob* claims because the facts establishing her *Hovet* claim had not yet occurred.

The Court also holds that Plaintiff's *Hovet* complaint commenced a separate civil action because the *Hovet* claim instituted a new liability separate and distinct from the *Raskob* liability alleged in the original complaint.   As this Court has explained, a *Raskob* claim is predicated upon an insurer's derivative contract-based duty to pay a tort liability incurred by its insured for negligence and a *Hovet* claim is predicated on harm directly inflicted on the plaintiff by the tortfeasor's insurer for bad faith and unfair insurance practices conducted while defending the insured in the underlying tort action.   Thus, Plaintiff's *Hovet* claim seeks damages for an entirely new liability that, unlike the original *Raskob* liability, is not derivative or premised upon the insured's negligence but rather is direct and premised upon the insurer's own wrongful conduct that allegedly violates the TPFA.   These differences are pivotal.

The Court is not deterred by the fact that the state court opted to allow Plaintiff to amend its complaint and assert her *Hovet* claims in the same "lawsuit" as her negligence claim instead of requiring Plaintiff to file a separate suit.   The New Mexico Supreme Court in *Hovet* specifically held that a third-party claimant may not sue both the insured and the insurer "in the same lawsuit." *Hovet*, 89 P.3d at 76.   It is *Hovet* itself, however, not a trial court's interpretation of *Hovet*, that establishes state law, and it is federal law, not state law, that governs when an action is commenced for purposes of triggering the one-year removal period contained in Section 1446(c).   *See Rivera*, 829 F. Supp. 2d at 1092 (refusing to allow the "peculiar stylings of state-law procedure" to define federal removal standards, for "[t]he removal statute . . . is nationwide in its operation, [and] was intended to be uniform in its application, unaffected by local law definition or characterization of the subject matter to which it is to be applied") (quoting *Shamrock Oil & Gas Corp. v. Sheets*, 313

27

U.S. 100, 104 (1941)); *Nungesser*, 2007 WL 4374022, at *6 (explaining that a federal court is "not bound by the labels attached by state practice," for "Congress intended the removal statute to be uniform in its nationwide application, and the removal statute thus sets its own criteria, irrespective of local practice, for determining what suits may be removed") (citing *Shamrock*, 313 U.S. 100).   While Plaintiff attempts to capitalize on the fact that she asserted her *Hovet* claim in an amended pleading rather than in a separate lawsuit as required by *Hovet*, the Court declines Plaintiff's invitation to advance form over substance, particularly because the form advanced directly contravenes *Hovet's* prohibition on bringing a third-party *Hovet* claim in the same lawsuit as an underlying negligence claim.   Moreover, as the courts in *Nungesser* and *Rivera* made clear, that a separate civil action is asserted in the same cause number is not dispositive, for it is the federal removal standard, and not any particular state procedural posture, that defines what constitutes the commencement of the action under Section 1446(c).

Nor is it compelling that the procedural posture of this case is different from that of *Rivera* or *Nungesser*, or that, as Plaintiff argues, *Nungesser* relied upon garnishment cases, and this case is not a garnishment proceeding.   The *Nungesser* court explicitly acknowledged that while its "procedural footing" was distinguishable from that of garnishment cases, "the principles expressed" were the same, *id.* at *6, "[w]hatever the case label," *id.* at *7.   The court reasoned that in both *Nungesser* and the garnishment cases the bad faith claim involved a new liability that did not exist until the underlying tort liability had been reduced to a final judgment, and it was these characteristics that compelled the court to conclude that the bad faith claim constituted a separate and distinct action, not the procedural posture of the case.   So too, here, that Plaintiff brings her bad faith claim directly pursuant to *Hovet*, which authorizes a third-party claimant to file a statutory claim against a tortfeasor's liability insurer for bad faith and unfair insurance practices,

28

instead of, as in *Rivera*, through an assignment allowing the Plaintiff to assert the insured's bad faith claims against its insurer, or, as in *Nungesser*, through a third-party complaint filed by the insured defendant-tortfeasor himself, or even, as in *Smotherman*, through a garnishment proceeding, is of no consequence.   Thus, that New Mexico provides a vehicle by which Plaintiff can assert her TPFA claims against a tortfeasor's insurer directly for bad faith and unfair insurance practices does not impact the fundamental character of the bad faith claim.

For the same reason, the Court is not persuaded that, as Plaintiff contends, *Rivera* and *Nungesser* are distinguishable because in those cases the insurer was either not a party (*Rivera*), or not a proper party (*Nungesser*) to the state tort action, whereas in this action, Plaintiff asserted a claim against Farmers pursuant to *Raskob* and therefore Farmers was a proper party in the state court litigation of Plaintiff's negligence claim.   The Court is not persuaded that Farmers' presence as a nominal party in the state litigation alters the fundamental character of a *Hovet* claim, which is that of a separate and distinct action that did not exist until Plaintiff obtained a favorable tort judgment and that could not have been brought in the same action as the tort claim.   *See, e.g.*, *Handshumaker v. Vangilder*, No. Civ. A. 15-1128-MLB, 2015 WL 5032054, *3 (D. Kan. Aug. 25, 2015) (acknowledging that some of the cases holding that a garnishment action against an insurer for bad faith is separate and distinct from the underlying tort action "have justified the rule by explaining that the garnishment is a suit involving a *new party* litigating the existence of a new liability," but rejecting the idea that the insurer must be "new" to the litigation for the bad faith claim to be deemed separate because an insurer's participation "does not alter the fundamental character of the garnishment as a different proceeding raising a new claim against [the insurer] that could not have been litigated together with the tort action") (internal quotation marks and citations omitted).   Furthermore, the import of the purported distinction is lessened because, although in

the *Rivera* case Valley Forge was not a party to the litigation the court specifically noted that Valley Forge was "involved in some capacity with the proceedings in state court," 829 F. Supp. 2d at 1090, and because in this case while Farmers was a party to the state action it was only a nominal party in a derivative capacity.

Plaintiff's last argument similarly fails to deter the Court from its conclusion that Plaintiff's *Hovet* complaint is separate and distinct from her negligence and *Raskob* claims. Plaintiff asserts that Defendant sought and obtained bifurcation of her *Hovet* claim and that the lifting of the stay on her *Hovet* claim did not transform her *Hovet* claim into a new action.   [Doc. 14 at 5].   Plaintiff further asserts that, by stipulating to bifurcation of the *Hovet* claim from the negligence claim, Defendant waived its right to argue that her *Hovet* claim commenced a "new" action.   [*Id.* at 5-6].   The Court is not persuaded.   The Court has held that Plaintiff, as a matter of law, could not have had a *Hovet* claim pending at any time prior to August 13, 2014, because this is the date on which she obtained a favorable judgment against Garcia and therefore is the date on which her *Hovet* claim accrued.   The Court also rejected Plaintiff's contention that the bifurcation on which she so heavily relies was a bifurcation of her *Hovet* claim.   To the contrary, the Court has confirmed that it was has Plaintiff's *Raskob* claim that the court bifurcated.   Thus, the bifurcation has no bearing on the question whether Plaintiff's *Hovet* claim was a "new" claim. Moreover, that Defendant sought and obtained bifurcation of Plaintiff's *Raskob* claim has no bearing on whether Defendant waived its right to argue that Plaintiff's *Hovet* claim commenced a "new" action.   To establish waiver—*i.e.*, the voluntarily relinquishment or abandonment of a legal right—Defendant must have "had both knowledge of the existing right and the intention of forgoing it."   *State v. Flores*, 340 P.3d 622, 625 (N.M. Ct. App. 2014) (citing the definition of "wavier" in Black's Law Dictionary) (additional citation and internal quotation marks omitted).

30

While stipulating to bifurcation of Plaintiff's *Raskob* claim might have relinquished a right to assert that Plaintiff's *Raskob* claim was "new,"[6] it does not establish that Defendant relinquished its right to argue that Plaintiff's *Hovet* claim—to which Defendant did not stipulate to bifurcation—was "new."

For all of these reasons, the Court holds that the amended complaint asserting Plaintiff's *Hovet* claims commenced a new action that was separate and distinct from the claims alleged in the original complaint and litigated in state court.   Accordingly, the one-year limitation on removal in 28 U.S.C. Section 1446(c) did not begin to run until October 19, 2014, when Plaintiff filed her amended complaint.   Because Defendant removed the amended complaint on November 25, 2014, its removal fell within the one-year removal period prescribed by Section 1446(c).   The Court therefore denies Plaintiff's Motion for Remand to the extent it seeks remand on the ground that Defendant's removal is barred by the one-year outer limit on removal.

III.   <u>Defendant did Not Waive Its Right to Remove the Amended Complaint</u>.

Plaintiff contends that Defendant Farmers waived its right to remove her amended complaint.   The right to remove may be waived when a defendant "demonstrate[s] a clear and unequivocal intent to remain in state court."   *Aranda v. Foamex Intern.*, 884 F. Supp. 2d 1186, 1200 (D.N.M. 2012) (internal quotation marks and citations omitted).   Generally, "a clear intent to remain in state court may be shown by taking 'substantial defensive action' before removal," or "by seeking a final determination on the merits of the case before removal."   *Id.* (citations omitted).   Our Tenth Circuit has held, for example, that "a defendant who actively invokes the

---

[6]   *See U.S. v. Cruz-Rodriguez*, 570 F.3d 1179, 1184 (10th Cir. 2009) (explaining that a "stipulation 'by its very nature signals the intentional relinquishment of any and all right to challenge the admissibility of the *stipulated evidence*, [and] is a clear example of waiver'") (quoting *U.S. v. Aptt*, 354 F.3d 1269, 1281 (10th Cir. 2004)) (emphasis added), *cited in* Doc. 14 at 6.

jurisdiction of the state court and interposes a defense in that forum," or files motions and schedules hearings on motions in state court may be barred from removal.  *Akin*, 156 F.3d 1030, 1036 n.7.  It is clear, however, that waiver will not occur by litigating in state court "in the absence of adequate notice of the right to remove."  *Id.* at 1036.  Moreover, "[a]s to the timing of the waiver, a defendant can waive the right to remove only by litigating after the case actually becomes removable."  *May v. Bd. of County Comm'rs for Cibola County*, 945 F. Supp. 2d 1277, 1298 (D.N.M. 2013) (citations omitted).

Plaintiff asserts that Defendant waived its right to remove the amended complaint to federal court by litigating in state court for more than two years.   This argument suffers from the same flaw underlying Plaintiff's claim that Defendant's removal was untimely pursuant to 28 U.S.C. Section 1446(b)(3).   Both arguments are premised upon the erroneous assumption that Plaintiff had a pending *Hovet* claim prior to the date on which she filed her amended complaint. The Court already has held that Plaintiff had no pending *Hovet* claim until she filed her amended complaint and that Defendant had no notice of her *Hovet* claim until her amended complaint was served.   These holdings are fatal to Plaintiff's claim of waiver.

Under well-settled law, a defendant cannot waive its right to remove absent notice of the right to remove, *see Akin*, 156 F.3d at 1036, and behavior cannot be deemed to give rise to waiver unless it occurs after a case has become removable, *see May*, 945 F. Supp. 2d at 1298.   Thus, Defendant Farmers cannot, as a matter of law, waive its right to remove a claim through conduct that occurred prior to a claim becoming removable or notice of a right to remove.   To accept Plaintiff's claim of waiver would be to charge Farmers with waiving a claim that it was not on notice was subject to removal, that had not even been filed, and that, pursuant to *Hovet*, had not even accrued.

Although Plaintiff cites Defendant's conduct of litigating in state court for two years as conduct actively invoking and demonstrating a clear and unequivocal intent to remain in state court, only 29 days of this two-year period lapsed after Plaintiff's *Hovet* claim first could be ascertained to be removable.   From October 27, 2014, the date on which Defendant was served, through November 25, 2014, the date on which Defendant removed the complaint, Defendant did not "actively invoke" the jurisdiction of the state court by asserting a defense in state court, by seeking a final determination on the merits before removal, or by engaging in any other conduct that could be construed as demonstrating a clear and unequivocal intent to remain in state court. Indeed, Plaintiff has pointed to no litigation action at all that Defendant took after being served with the amended complaint other than filing its Notice of Removal.

The Court holds that allowing a removable claim to remain pending for 29 days prior to removing it, in the absence of any other conduct, does not manifest a clear and unequivocal intent to remain in state court.   Accordingly, the Court rejects Plaintiff's claim that Defendant waived its right to remove the amended complaint.

IV.    Plaintiff has No Statutory Basis for An Award of Attorney's Fees.

Plaintiff moves for attorney's fees pursuant to 28 U.S.C. Section 1447.   "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."   § 1447(c).   Because the Court declines to enter an order remanding the case, Plaintiff has no statutory basis for seeking costs under Section 1447(c). Thus, the Court denies Plaintiff's fee request.

## CONCLUSION

For the foregoing reasons, **IT THEREFORE IS ORDERED** that Plaintiffs' Motion for Remand [Doc. 7] is hereby denied.

**SO ORDERED** this 17th day of December, 2015.


_____
M. CHRISTINA ARMIJO
CHIEF UNITED STATES DISTRICT JUDGE